**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, AT CLEVELAND**

| | | |
|---|---|---|
| **RARE BREED TRIGGERS, LLC, a North Dakota limited liability company, and ABC IP, LLC, a Delaware limited liability company,** | ) ) ) ) | CASE NO.  1:22-CV-280 |
| | ) | **JURY TRIAL DEMANDED** |
| **Plaintiffs.** | ) ) | |
| **-vs-** | ) ) | |
| **MLADEN THOMAS "TOM" STRBAC, an individual, doing business as TOMMY TRIGGERS,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

---

### COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT

---

This is an action for patent infringement and trademark infringement in which Rare Breed Triggers, LLC ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse Mladen Thomas Strbac, d/b/a Tommy Triggers ("Tommy Triggers" or "Defendant"), of infringing U.S. Patent No. 10,514,223 ("the '223 Patent") and the FRT-15™ trademark as follows:

### PARTIES

1.      Rare Breed is a limited liability company organized under the laws of the State of North Dakota with an office at 3523 45th Street South, Suite 100, Fargo, ND 58104.

2.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.     Upon information and belief, Defendant Mladen Thomas "Tom" Strbac is an individual residing in Cleveland Heights, Ohio, and doing business as Tommy Trigger, having a place of business at 25890 Lakeland Boulevard, Euclid, Ohio 44132.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85 and for trademark infringement under 15 U.S.C. § 1051 *et seq*.

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

6.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) with respect to the claims arising out of the alleged violations of The Lanham Act, 15 U.S.C. § 1051 et seq., and under 28 U.S.C. § 1338(b) and/or § 1367(a) with respect to the claims under the state statutory and common law. Federal question jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121(a). Jurisdiction over the claims brought under state statutory and common law is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

7.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Diversity of citizenship jurisdiction is conferred pursuant to 28 U.S.C. § 1332(a).

8.     Personal jurisdiction and venue over Defendant are proper in this District because Defendant resides in and has a place of business his district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendant resides in this district and has a regular and established place of business in this District located at 25890 Lakeland Boulevard, Euclid, Ohio 44132.

## BACKGROUND

10.      This lawsuit asserts infringement of the '223 Patent. A true and correct copy of the '223 Patent is attached hereto as Exhibit A.

11.      ABC is the current assignee and owner of all right, title and interest in and to the '223 Patent. This assignment has not been recorded at the United States Patent and Trademark Office ("USPTO"). Rare Breed has the exclusive right to sell products covered by the '223 Patent.

12.      Upon information and belief, Defendant has committed acts of patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

13.      Upon information and belief, Defendant has committed acts of trademark infringement, which will be described in more detail later. These acts are in violation of 15 U.S.C. § 1125(a) and should be considered willful.

14.      The Plaintiffs and Defendant both operate in the firearms industry.

15.      Plaintiffs are responsible for developing the forced reset trigger, including the Rare Breed FRT-15™ for use in the AR-15 weapons platform. The FRT-15™ trigger is one embodiment of the '223 Patent's invention.

16.      For the entire time the FRT-15™ has been marketed and sold by Rare Breed, it has been marked with a patent notice complying with 35 U.S.C. § 287. The patent number is engraved on the product and displayed on packaging as shown below:



17.     The Rare Breed FRT-15™ trigger was first introduced to the market in December 2020. It is unique, being the only hammer-forced-reset trigger on the market and exclusively protected by the '223 Patent. The unique FRT-15™ trigger created a new market for the product that did not exist before. The FRT-15™ trigger has been the subject of much publicity, consumer interest, and vigorous sales.

18.     Defendant is responsible for misappropriating Plaintiffs' proprietary technology and selling it as his own in direct competition with Rare Breed.

19.     On January 17, 2022, counsel for Plaintiffs sent a cease and desist demand letter to Defendant, informing him of the '223 Patent and expressly accusing him of patent infringement. *See* Exhibit B.


### The Invention

20.     The '223 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art

devices that allow accelerated rate of semiautomatic firing. While the '223 Patent may be adapted to many types of firearms, the Plaintiffs' FRT-15™ trigger was designed as a drop-in replacement particularly to fit AR-15 pattern firearms.

21.     An example of the Rare Breed FRT-15™ trigger is shown in Paragraph 16, above.

22.     An AR-15 pattern firearm, for example, is considered a semiautomatic firearm. In standard semiautomatic firearms, the trigger releases a sear which allows a hammer to contact a firing pin and fire a chambered ammunition cartridge, i.e., a "round." Part of the force that propels the round is used to cycle the rifle's bolt/bolt carrier or "action" in a rearward direction which extracts and ejects the spent cartridge. Springs at the rear of the bolt carrier act to return the bolt to its original firing position (i.e., into battery), and while so returning, a new cartridge (i.e., "round") is placed in the firing chamber. The longitudinal reciprocation of the bolt also resets the hammer and enables the weapon to be fired again. This process can be seen in the sequence of illustrations below.

23.     For background context, the following is a depiction and description of the operation of a *standard* **AR-pattern trigger mechanism**:



24.    The trigger is shown in purple. The hammer is shown in brown. The disconnector is shown in green. The bolt carrier is shown in blue.

25.    The process is commenced by the trigger being pulled by the user. The trigger releases the hammer from the trigger sear and allows the hammer to strike the firing pin.



26.    A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm.



27.     The rear-ward movement of bolt carrier cocks the hammer on the disconnector and allows the bolt to return into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

28.     The '223 Patent is a semiautomatic trigger that represents improvement on the above-described technology because it makes the disconnector unnecessary by forcibly returning the trigger to the reset state.

29.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

30.     The '223 Patent invention does not require a disconnector in the trigger mechanism. The '223 Patent teaches a forcible reset of the trigger by the hammer while the bolt returns to the in-battery position. The '223 Patent also teaches a "locking bar" which limits movement of the trigger. The locking bar acts to prevent the trigger from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position. This is depicted in the illustrations below.

31.     The following is a reproduction of a representative trigger assembly according to an embodiment of the '223 Patent:



32.     The trigger is shown in red. The hammer is shown in brown. The locking bar is shown in green. The bolt carrier is shown in blue.



33.     When the trigger is pulled, the hammer is released, which strikes the firing pin carried in the bolt carrier.

34.  As the round fires, propellant gas pressure causes the action to cycle. This begins the process of sending the bolt carrier toward the rear of the firearm.



35.  As the bolt carrier moves toward the rear of the firearm, the bolt carrier engages with and cocks the hammer. The invention of the '223 Patent provides that the hammer forcibly resets the trigger. Simultaneously, the locking bar engages with the trigger and mechanically prevents the shooter from pulling the trigger until the locking bar is reset. The locking bar cannot be reset until the bolt carrier returns to its in-battery position.

36.  As the bolt carrier returns forward to its in-battery position, a new round is inserted into the chamber and the bolt closes. As the bolt closes, the bolt carrier contacts and pivots the locking bar, freeing the trigger to be pulled again by the user and the firing process repeated.

37.  The claims of the '223 Patent define the scope of the invention. For example, Claim 4 specifies a housing, a hammer, a trigger member, and a locking bar.

38.  Plaintiffs have been developing a "three-position" type forced rest trigger in which a safety selector switch can change the mode of operation between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with locking bar modes,

publicly demonstrated it on January 15, 2022, and announced their intention to offer it on the market soon. The new Rare Breed FRT-15E3™ three-position trigger, shown below, in production now and expected to be offered on or about March 1, 2022.



**The FRT-15™ Trademark**

39.     Rare Breed's trigger has been consistently and continuously sold under the trademark FRT-15™, and its packaging and promotions are so marked with the FRT-15™ trademark.

40.     ABC is the owner of the FRT-15™ trademark and has exclusively licensed Rare Breed to use this mark.

41.     The FRT-15™ trademark is recognized by consumers as distinctive of goods originating from Rare Breed.

42.     Rare Breed's exclusive use of the FRT-15™ trademark and goodwill inures to the benefit of the licensor, ABC.

**The Infringing Devices**

43.     Defendant is currently making, using, selling, and/or offering for sale a version of Plaintiffs' FRT-15™ trigger assembly, which embodies the technology claimed in the '223 Patent.

44.     Defendant's infringing trigger assembly is called the "FRT-15-3MD." Defendant sells or offers for sale at least four forced reset trigger models ("the Infringing Devices"). Exemplary photographs of these are shown below:






 These models operate identically and differ in the shape of the trigger blade/shoe and whether designed to fit a "high shelf" or "low shelf" AR-15 lower receiver.

45.     The Tommy Triggers FRT-15-3MD includes an additional feature not included in the current version of the Rare Breed FRT-15™ trigger but that will be part of a soon to be released model, the FRT-15E3™. Specifically, the Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The use can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with locking bar modes by rotating the safety selector.

46.     Below is a photograph of internal components, primarily the trigger, hammer, locking bar, and springs of the Infringing Devices.



47.     Defendant also makes, offers, and sells what it calls "The Ultimate Upgrade for the Rare Breed Trigger" that provides a hammer, trigger member/disconnector assembly, and safety selector that uses the housing and locking bar of a Rare Breed FRT-15™ trigger to reconstruct it to operate in three modes: safe, standard semiautomatic with disconnector, and forced reset semiautomatic with locking bar modes. This assembly of parts is shown below:



48.     When the components of "The Ultimate Upgrade for the Rare Breed Trigger" are assembled by a customer as instructed by Defendant, the assembly is a direct infringement of the '223 Patent.

49.     "The Ultimate Upgrade for the Rare Breed Trigger" is a component of a patented combination constituting a material part of the invention. Defendant knows the same to be especially made or especially adapted for use in an infringement of the '223 Patent, and it is not a staple article or commodity of commerce suitable for substantial noninfringing use.

50.     Defendants' Infringing Devices (inclusive of "The Ultimate Upgrade for the Rare Breed Trigger") employ and embody the technology claimed by the '223 Patent by using the hammer to forcibly reset the trigger and to prevent the trigger from being pulled again by virtue of the locking bar engaging the trigger until the forward action of the bolt carrier disengages the locking bar from the trigger as specified in at least Claim 1 of the '223 Patent. Furthermore, the Infringing Devices are assembled in a housing which includes transversely aligned pairs of openings for receiving hammer and trigger assembly pins, as specified in Claim 4 of the '223 Patent.

51.     FIG. 2 of the '223 Patent, shown below, is illustrative of one embodiment of the invention. FIG. 2 depicts a "drop-in" trigger assembly (with the housing partially cut away).



**FIG. 2**

52.     The hammer 18 includes a sear catch 46 that engages the sear 48 on the trigger member 26, when cocked.

53.     FIG. 3 is representative of one embodiment of the locking bar 62 and its relationship with the trigger 28, hammer 18, and bolt carrier 56.



**FIG. 3**

54. The user can rotate a safety selector (60) between safe and fire (forced reset semiautomatic with locking bar) modes.

55. For the reasons discussed in more specificity below, Defendants' the Infringing Devices each infringe at least one claim of the '223 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271.

56. In view of the Defendants' prior relationship with Rare Breed and defiance of Rare Breed's demand letter in advance of commercial sale of the Infringing Device, the infringement is willful.

## COUNT I – INFRINGEMENT OF THE '223 PATENT

57. The allegations set forth in paragraphs 1-56 are fully incorporated into this First Count for Relief.

58. Upon information and belief, Defendant has and continues to directly and willfully infringe, including through the doctrine of equivalents, at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, the Tommy Triggers FRT-15-3MD and other models of forced reset triggers (the "Infringing Devices").

59. Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement.

60. An exemplary comparison of the Infringing Devices with claim 4 of the '223 Patent is illustrated in the chart below:

| Claim Language | Infringing Tommy Trigger |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | The Tommy Triggers FRT-15-3MD models are for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Tommy Triggers FRT-15-3MD models include a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

| | |
|---|---|
| |  |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Tommy Triggers FRT-15-3MD models include a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions.<br><br> |

<table>
<tr>
<td></td>
<td>



**Hammer**

**Sear notch**

**Transverse axis**

**RELEASED POSITION**
</td>
</tr>
<tr>
<td>
a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position;
</td>
<td>
The Tommy Triggers FRT-15-3MD models include a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions.

**Surface contacted by hammer**

**Trigger member**

**Sear**

**Transverse axis**

**SET POSITION**
</td>
</tr>
</table>

| | |
|---|---|
| |  **RELEASED POSITION**<br><br>The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.<br><br>The contact causes the trigger member to be forced to the set position. |
| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position. | The Tommy Triggers FRT-15-3MD models include a locking bar that is pivotally mounted in the housing.<br><br><br><br>The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the |

released position.



**FIRST POSITION**

The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.



**SECOND POSITION**

61.     The working components of the Infringing Devices include functional reproductions of the '223 Patent when comparing the working components of the Infringing Devices to the language of the claims, which is the legal standard for infringement.

62.     Tommy Trigger's "The Ultimate Upgrade for the Rare Breed Trigger" conversion kit provides a hammer and trigger member assembly that, when assembled as instructed by Defendant, formed an infringing combination of parts. This assembly by the purchaser is a reconstruction and not a repair.

63.     "The Ultimate Upgrade for the Rare Breed Trigger" are components of the patented combination or composition constituting a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use. Defendant knows "The Ultimate Upgrade for the Rare Breed Trigger" is especially made or especially adapted for use in an infringement of the '223 Patent.

64.     Accordingly, Defendant's sale and/or offer to sell "The Ultimate Upgrade for the Rare Breed Trigger" is infringement under 35 U.S.C. § 271 (a), (b), and/or (c).

65.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct and/or indirect infringement of the '223 Patent.

66.     Sales of the Infringing Devices directly compete against and unlawfully displace sales of the patented Rare Breed FRT-15™ trigger.

67.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

68.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – TRADEMARK INFRINGEMENT

### UNDER 35 U.S.C. § 1125(a)

69.     The allegations of paragraphs 1-68 are incorporated by reference as if fully set out herein.

70.     This claim arises under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051 *et seq.*, particularly 15 U.S.C. § 1125(a), and alleges use of false designations of origin, and false descriptions and misrepresentations.

71.     ABC is the owner of common law and statutory trademark rights in the trademark FRT-15™ (the "FRT-15™ Trademark") based on actual use in commerce.

72.     The FRT-15™ Trademark is distinctive and has been used in commerce by ABC's exclusive licensee, Rare Breed, since at least December 2020.

73.     All goodwill and rights derived from use by the exclusive licensee have inured to the benefit of ABC.

74.     ABC has used the FRT-15™ trademark in the United States and Ohio through its exclusive licensee, Rare Breed, to identify goods and to distinguish them from the goods of others. The FRT-15™ trademark is prominently displayed in promotions and on all packaging in which the FRT-15™ trigger is sold, as shown below:



75.     As a result of Rare Breed's extensive and widespread advertising and sale of triggers using the FRT-15™ trademark, and the distribution and sale of thousands of such triggers in the United States over the past 14 months, ABC, through its exclusive licensee Rare Breed, has established valuable goodwill, public recognition, and secondary meaning in the FRT-15™ trademark in the United States and in the State of Ohio.

76.     Defendant has used the trademark FRT-15-3MD (the "Infringing Mark") on a forced reset trigger sold in direct competition with the Rare Breed FRT-15™ trigger.

77.     The Infringing Mark is used on the Tommy Triggers goods and on packaging for the goods and in promotion of the goods as shown below:



78.    Defendant's use of the Infringing Mark (a) constitutes the use of false designations of origin and tends falsely to represent or designate the source of Tommy Triggers' products as being affiliated with, connected with, or associated with Rare Breed and tends falsely to represent or designate that Tommy Triggers' products originate with, are sponsored or approved by, or are otherwise connected with Rare Breed when in fact Tommy Triggers is neither connected with nor authorized by Rare Breed, and (b) are likely to cause confusion or mistake or deceive the trade and users as to the origin, sponsorship, association, or approval of Tommy Triggers' forced reset trigger products.

79.    The acts of Tommy Triggers complained of herein have been without the authorization or consent of Rare Breed or ABC and have damaged, are damaging, and are likely to continue to damage Rare Breed and ABC.

80.    The acts of Tommy Triggers complained of herein constitute a violation of § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), have caused irreparable harm and

damage to Rare Breed and ABC for which there is no adequate remedy at law, and have caused Rare Breed and ABC to suffer monetary damages in an amount thus far not determined.

81.     By reason of the acts of Tommy Triggers alleged herein, Rare Breed and ABC has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## COUNT III – INFRINGEMENT OF THE FRT-15™ TRADEMARK UNDER THE OHIO DECEPTIVE TRADE PRACTICES ACT

82.     The allegations of paragraphs 1-81 are incorporated by reference as if fully set out herein.

83.     This claim arises under the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq*.

84.     ABC has used the FRT-15™ trademark in Ohio through its exclusive licensee, Rare Breed, to identify goods and to distinguish them from the goods of others. The FRT-15™ trademark is prominently displayed in promotions and on all packaging in which the FRT-15™ trigger is sold, as shown above.

85.     As a result of Rare Breed's extensive and widespread advertising and sale of triggers using the FRT-15™ trademark, and the distribution and sale of thousands of such trigger in the United States over the past 14 months, ABC, through its exclusive licensee Rare Breed, has established valuable goodwill, public recognition, and secondary meaning in the FRT-15™ trademark in the United States and in the State of Ohio.

86.     Defendants use of the Infringing Mark (a) constitutes the use of false designations of origin and tends falsely to represent or designate the source of Tommy's products as being

affiliated with, connected with, or associated with Rare Breed and tends falsely to represent or designate that Tommy Triggers' products originate with, are sponsored or approved by, or are otherwise connected with Rare Breed when in fact Tommy Triggers is neither connected with nor authorized by Rare Breed, and (b) are likely to cause confusion or mistake or deceive the trade and users as to the origin, sponsorship, association, or approval of Tommy Triggers' forced reset trigger products.

87. The acts of Tommy Triggers complained of herein have been without the authorization or consent of Rare Breed or ABC and have damaged, are damaging, and are likely to continue to damage Rare Breed and ABC.

88. The acts of Tommy Triggers complained of herein constitute a violation of O.R.C. § 4165.02, have caused irreparable harm and damage to Rare Breed and ABC for which there is no adequate remedy at law, and have caused Rare Breed and ABC to suffer monetary damages in an amount thus far not determined.

89. Upon information and belief, Tommy Triggers has willfully engaged in the conduct complained of herein knowing the same to be deceptive.

90. By reason of the acts of Tommy Triggers alleged herein, Rare Breed and ABC has suffered, is suffering, and will continue to suffer irreparable damage, which damage will continue unless and until enjoined by order of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a. A judgment in favor of Plaintiffs that Defendant has infringed and induced others to infringe the '223 Patent;

b. A judgment in favor of Plaintiffs that Defendant has infringed the FRT-15™ Trademark;

c. A preliminary injunction enjoining Defendant and his agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

d. A preliminary injunction enjoining Defendant and his agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement the FRT-15™ Trademark during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendant and his agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

f. A permanent injunction enjoining Defendant and his agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement of the FRT-15™ Trademark, or other such equitable relief as the Court determines is warranted;

g. A judgment and order requiring Defendant to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement;

h. A judgment and order requiring Defendant to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of

the FRT-15™ Trademark as provided under 15 U.S.C. § 1117, and an accounting of ongoing post-judgment infringement; and

i. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


DATED: February 21, 2022          Respectfully submitted,

/Glenn D. Bellamy/
Glenn D. Bellamy (Ohio Bar No. 0070321)
**Wood Herron & Evans LLP**
2700 Carew Tower
441 Vine Street
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234


*Attorneys for Plaintiffs*